1  MICHAEL L. SWAIN (133260)
   ROSS I. LANDAU (259260)
2  SWAIN & DIPOLITO LLP
   555 East Ocean Boulevard, Suite 600
3  Long Beach, California 90802
   Telephone:  (562) 983-7833
4  Facsimile:  (562) 983-7835
   E-mail: mswain@swaindipolito.com
5          rlandau@swaindipolito.com

6  Attorneys for Plaintiff,
   HYUNDAI MERCHANT MARINE CO., LTD.

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 HYUNDAI MERCHANT MARINE CO., LTD., )   IN ADMIRALTY
   a Korean corporation,              )
12                                     )   Case No. 2:19-cv-08858-
                  Plaintiffs,          )   GW-FFMx
13                                     )
        vs.                            )   Honorable George H. Wu
14                                     )
   ALL NEW, INC., a Texas              )   DECLARATION OF SEUNG H.
15 corporation,                        )   KIM IN SUPPORT OF MOTION
                                       )   FOR DEFAULT JUDGMENT
16                Defendants.          )
                                       )
17 _____)  DATE:  August 6, 2020
                                           TIME:  8:30 a.m.
18                                         CTRM:  9D

19

20

21      I, Seung H. Kim, declare as follows:

22

23      1.   I am the Claims Manager for HYUNDAI MERCHANT MARINE

24 CO., LTD. ("Hyundai"), plaintiff in the captioned matter, and I

25 have read the Complaint and know the contents thereof.  I

26 have personal knowledge of the facts recited below and would and

27 could testify thereto if called as a witness.

28

1    2.    The allegations of the Complaint are true.

2

3    3.    On May 18, 2020, the Clerk entered the Default of

4    Defendant All New, Inc., to the allegations in Hyundai's

5    Complaint.

6

7    4.    No answer has been filed by, or on behalf of, the

8    Defendant All New, Inc., within the time permitted by law, and

9    the Defendant All New, Inc., has not personally appeared in this

10   action.

11

12   5.    The Defendant All New, Inc., is not an infant,

13   incompetent person, or a person in the military service or

14   otherwise exempted from default judgment under the Soldiers' and

15   Sailors' Civil Relief Act of 1940.

16

17   6.    This action involves a claim for wharf demurrage

18   against the Defendant All New, Inc.  There is now due and owing

19   the sum of $433,080, from the Defendant All New, Inc., for

20   demurrage.

21

22   7.    Between March 1, 2018, and May 7, 2018 Defendant All

23   New, Inc., shipped twenty-five (25) ocean shipping containers of

24   plastic scrap aboard ships owned, operated, and under contract

25   with Hyundai from the Port of Los Angeles, California, and other

26   U.S. ports, to foreign ports located in Thailand.

27   ///

28   ///

Decl. of Seung H. Kim in Support of Mtn for Def Jdgmnt

8.    In connection with All New, Inc.'s shipment of these forty foot (40') containers of plastic scrap, Hyundai, as the ocean carrier, issued eleven (11) Hyundai bill of lading contracts of carriage Nos. HDMUCIWB3505768, HDMUCIWB3506173, HDMUGABK3483769, HDMUGAWB3490436, HDMUGAWB3499628, HDMUGAWB3507057, HDMUGAWB3502482, HDMUNRWB3486029, HDMUTXWB3494334, and HDMUTXWB3499421, and HDMUTXWB3502489, to the shipper, defendant All New, Inc., for the carriage of the cargoes.  True and correct copies of the face pages of these Hyundai bills of lading are attached hereto as Exhibit A-1 thru A-11,

9.    The subject containerized cargoes of plastic scrap were laden onboard Hyundai vessels in Los Angeles, California, and at other U.S. ports, and carried to destination; however, delivery of the containers of plastic scrap was not timely taken by the consignee at the ports of destination in Thailand.  Instead, they sat idle at the sea terminal in Thailand.  The subject containerized cargoes were never abandoned by All New, Inc.

10.    The foregoing shipments were made pursuant to the reverse terms and conditions of Hyundai's bill of lading contracts of carriage, by which Defendant All New, Inc., as shipper, agreed to pay all demurrage charges accruing on account of the subject cargoes, without any offset or deduction.  A true and correct copy of the terms and conditions of Hyundai's bill of lading contracts of carriage is attached hereto as Exhibit "B."

///

11.   Pursuant to the terms and conditions of the bill of lading contracts of carriage, the foregoing shipments were subject to Hyundai's published tariff rate for demurrage, a true and correct copy of which is attached hereto as Exhibit "C." Hyundai's published tariff sets forth a daily demurrage rate of 740 THB per day for undelivered 40' containers stored at the terminal for the first five days after the expiration of free time, and 1,440 THB per day for undelivered 40' containers stored at the terminal from the sixth day and thereafter.  In U.S. dollars, the demurrage rate for a 40' container is $45 per day.

12.   Attached hereto is as Exhibit "D" is a true and correct copy of a summary of the demurrage charges for the 25 idling 40' containers shipped by All New, Inc.  The demurrage charges are also itemized in the Complaint by bill of lading number as follows:

| Bill of Lading No. | Amount |
| --- | --- |
| HDMUCIWB3505768 | $ 33,210 |
| HDMUCIWB3506173 | $ 16,605 |
| HDMUGABK3483769 | $ 33,660 |
| HDMUGAWB3490436 | $ 16,920 |
| HDMUGAWB3499628 | $114,030 |
| HDMUGAWB3507057 | $ 30,440 |
| HDMUGAWB3502482 | $ 64,980 |
| HDMUNRWB3486029 | $ 16,965 |
| HDMUTXWB3494334 | $ 71,640 |

```
1        HDMUTXWB3499421              $ 16,920

2        HDMUTXWB3502489              $ 33,930

3

4        The demurrage charges total $433,080, for the 25 containers

5    carried under Hyundai bill of lading Nos. HDMUCIWB3505768,

6    HDMUCIWB3506173, HDMUGABK3483769, HDMUGAWB3490436,

7    HDMUGAWB3499628, HDMUGAWB3507057, HDMUGAWB3502482,

8    HDMUNRWB3486029, HDMUTXWB3494334, and HDMUTXWB3499421, and

9    HDMUTXWB3502489.

10

11       13.   A written demand for payment of the demurrage charges

12   in the sum of $433,080, which are due and owing from the

13   defendant by contract and under Hyundai's tariff, was made on All

14   New, Inc.  Despite amicable demand, defendant All New, Inc., has

15   failed to pay these demurrage charges.

16

17       14.   As a result of the aforesaid breaches of contract and

18   failure to pay demurrage imposed by tariff, Hyundai has sustained

19   damages in the sum of $433,080, representing the amount of

20   demurrage due and owing from defendant All New, Inc., for the

21   storage of the 25 idling containers shipped by All New, Inc.

22

23       I declare under penalty of perjury under the laws of the

24   United States that the foregoing is true and correct.

25

26       Executed this 20 day of July, 2020, at   Irving   ,

27   Texas.

28                                    _____
                                               Seung H. Kim
```

- 5-

Decl. of Seung H. Kim in Support of Mtn for Def Jdgmnt

**EXHIBIT A**

NON-NEGOTIABLE COPY
Printed via GAUS

**SEA WAYBILL**



**HYUNDAI**
MERCHANT MARINE CO., LTD.

| Shipper/Exporter (complete name and address) | Document No. | B/L No. HDMU |
|---|---|---|
| ALL-NEW INC.<br>4201 FM 1960 W<br>SUITE 218<br>HOUSTON, TX 77068 | ILLB454370 | CIWB3505768 |

Export References

12677

| Consignee (complete name and address) | Forwarding Agent References |
|---|---|
| THAI ENTERPRISE GROUP CO.LTD<br>988 MOO,2 PHRAEK SA MAI,<br>MUANG,SAMUTPRAKARN 10280<br>TEL:66-2-3856400-1<br>FAX:66-2-356402 | |

Point and Country of Origin

CHICAGO, IL

| Notify Party (complete name and address) | Domestic Routing/Export Instructions |
|---|---|
| THAI ENTERPRISE GROUP CO.LTD<br>988 MOO,2 PHRAEK SA MAI,<br>MUANG,SAMUTPRAKARN 10280<br>TEL:66-2-3856400-1<br>FAX:66-2-356402 | |

| Pre-Carriage by | Place of Receipt* CHICAGO, IL | |
|---|---|---|
| Ocean Vessel/Voyage/Flag HYUNDAI BANGKOK V 077W | Port of Loading LOS ANGELES, CA | Onward Inland Routing |
| Port of Discharge BANGKOK, THAILAND | For Transhipment to | Place of Delivery* BANGKOK, THAILAND | Final Destination(For the Merchants Ref.) |

## PARTICULARS FURNISHED BY SHIPPER

| Container No./Seal No. Marks and Numbers | No.of Containers or Other Pkgs | Description of Packages and Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| | | SHIPPER'S LOAD & COUNT<br>AES ITN # 20180419140104<br>2 X 40'HC CONTAINERS<br>60 BALES | | 38,347.0000<br>KGS. |
| TNG | | PLASTC SCRAP<br>*** DELIVERY TERMINAL : PAT ONLY | | |
| | | FREIGHT PREPAID<br>***EXPRESS BILL OF LADING ***<br>"COPY NON-NEGOTIABLE B/L RELEASE PROCEDURES" | | |
| CONTAINER<br>HDMU6727920<br>TCNU7581366 | | SEAL      PACKAGES    GR.WT<br>1900145  30 BALES 19151 KGS<br>1900147  30 BALES 19196 KGS | | |

| Total Number of Containers or Packages (in words) | TWO FORTY FOOT HC CONTAINERS ONLY |
|---|---|

| Freight & Charges FREIGHT AS ARRANGED | Rate | Unit | Prepaid | Collect |
|---|---|---|---|---|
| | | | | |

| Declared Value     US $ ( Optional ) | | Total | |
|---|---|---|---|

1. This Sea Waybill shall have effect subject to any legislation that enacts the International Convention for the Unification of Certain Rules Relating to Bills of Lading dated Brussels 25 August 1924 as amended by the Protocol signed at Brussels on 23 February 1968 (Hague-Visby Rules"), provided that such legislation is compulsorily applicable in the country where this Sea Waybill is issued or goods are to be delivered, but if there is not such compulsorily applicable legislation, the terms of the Hague-Visby Rules shall apply.
2. Notwithstanding the paragraph 1 hereof, if this Sea Waybill covers Goods moving to or from ports in the United States in foreign trade, or if United States law is otherwise compulsorily applicable, then carriage of such Goods shall be subject to the provisions of the United States Carriage of Goods by Sea Act, 1936, and any amendments thereto (hereinafter "U.S. COGSA"), the terms of which are incorporated in this Sea Waybill, and the provisions of U.S. COGSA shall govern prior to loading on and subsequent to the discharge from the Vessel and throughout the time when the Goods are in the custody of the Carrier or any Subcontractor including all export or international Transportation.
3. This Sea Waybill is not a document of title and the Carrier is entitled to deliver goods without presentation of this Sea Waybill.
4. Subject to the foregoing paragraphs, all the terms and conditions, including but not limited to exceptions, defences and liberties, of the Carrier's Standard B/L of lading, which will be made available upon request, shall be deemed to be incorporated herein with logical amendments.
*Applicable only when this document is used as an Intermodal transport document

| Number of Original B(s)/L | | On Board Date |
|---|---|---|
| NIL | | APR. 27,2018 |

(OBD : 20180427)

| Dated at | APR. 27,2018 |
|---|---|
| | HYUNDAI MERCHANT MARINE CO.,LTD.AS CARRIER |

By

A-1

A6

NON-NEGOTIABLE COPY
Printed via GAUS

**SEA WAYBILL**



**HYUNDAI** MERCHANT MARINE CO., LTD.

| Shipper/Exporter (complete name and address) | Document No | B/L No. HDMU |
|---|---|---|
| ALL-NEW INC.<br>4201 FM 1960 W<br>SUITE 218<br>HOUSTON, TX 77068 | ILLD454767<br>Export References<br>126 | CIWB3506173 |

| Consignee (complete name and address) | Forwarding Agent References |
|---|---|
| THAI MANGKORN PLASTIC INDUSTRY CO.,<br>LTD. 333/5 M.4 PREKRASA,<br>MUANGSAMUTPRAKARN,SAMUTPRAKARN<br>TEL:026763501 0873367448<br>EMAIL:FENFENIONUK@HOTMAIL.COM<br>HTLIAO123@HOTMAIL.COM | |

| Notify Party (complete name and address) | Point and Country of Origin |
|---|---|
| THAI MANGKORN PLASTIC INDUSTRY CO.,<br>LTD. 333/5 M.4 PREKRASA,<br>MUANGSAMUTPRAKARN,SAMUTPRAKARN<br>TEL:026763501 0873367448<br>EMAIL:FENFENIONUK@HOTMAIL.COM<br>HTLIAO123@HOTMAIL.COM | HASLET, TX<br>Domestic Routing/Export Instructions |

| Pre-Carriage by | Place of Receipt* | |
|---|---|---|
| | CHICAGO, IL | |
| Ocean Vessel/Voyage/Flag | Port of Loading | Onward Inland Routing |
| HYUNDAI BANGKOK V 077W | LOS ANGELES, CA | |
| Port of Discharge | For Transshipment to | Place of Delivery* |
| BANGKOK, THAILAND | | BANGKOK, THAILAND | Final Destination(For the Merchants Ref.) |

**PARTICULARS FURNISHED BY SHIPPER**

| Container No./Seal No.<br>Marks and Numbers | No of Containers<br>or Other Pkgs | Description of Packages and Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| THAI MANGKORN | | SHIPPER'S LOAD & COUNT<br>AES ITN # X20180420185518<br>1 X 40' HC CONTAINER<br>30 BALES<br>PLASTIC SCRAP<br>**DELIVER TERMINAL : PAT TERMINAL ONLY<br><br>FREIGHT PREPAID<br>***EXPRESS BILL OF LADING ***<br>"COPY NON-NEGOTIABLE B/L RELEASE PROCEDURES"<br><br>TCLU8381489/1900128    DC 4H | 19,000.0000<br>KGS | |

| Total Number of Containers<br>or Packages (in words) | ONE FOURTY FOOT HC CONTAINER ONLY |
|---|---|

| Freight & Charges | Rate | Unit | Prepaid | Collect |
|---|---|---|---|---|
| FREIGHT AS ARRANGED | | | | |

| Declared Value<br>( Optional )  : US $ | | Total | |
|---|---|---|---|

1. This Sea Waybill shall have effect subject to any legislation that enacts the International Convention for the Unification of Certain Rules Relating to Bills of Lading dated Brussels 25 August 1974 as amended by the Protocol signed at Brussels on 23 February 1968 (Hague-Visby Rules"), provided that such legislation is compulsorily applicable in the country where this Sea Waybill is issued the Sea Waybill as so delivered, but if there is no such compulsorily applicable legislation, the terms of the Hague-Visby Rules shall apply.
2. Notwithstanding the paragraph 1 hereof, if this Sea Waybill covers Goods moving to or from ports of the United States in foreign trade, of if United States law is otherwise compulsorily applicable, then carriage of such Goods shall be subject to the provisions of the United States Carriage of Goods by Sea Act, 1936, and any amendments thereto (hereinafter "U.S. COGSA"), the terms of which are incorporated in this Sea Waybill, and the provisions of U.S. COGSA shall govern prior to loading on and subsequent to the discharge from the Vessel and throughout the time when the Goods are in the custody of the Carrier or any Subcontractor including at stages of intermodal Transportation.
3. This Sea Waybill is not a document of title and the Carrier is entitled to deliver goods without presentation of the Waybill.
4. Subject to the foregoing paragraphs, all the terms and conditions, including but not limited to exceptions, defences and liberties, of the Carrier's Standard Bill of lading, which will be made available upon request, shall be deemed to be incorporated herein with logical amendments.
*Applicable only when this documents is used as an Intermodal transport document

| Number of Original B(s)/L | On Board Date |
|---|---|
| NIL | APR. 27,2018 |
| | (OBD : 20180427) |
| Dated at | APR. 27,2018 |
| HYUNDAI MERCHANT MARINE CO.,LTD.AS CARRIER | |
| By | |

A-2

A7

NON-NEGOTIABLE COPY
Printed via GAUS

SEA WAYBILL



HYUNDAI
MERCHANT MARINE CO., LTD.

| Shipper/Exporter (complete name and address) | Document No GASV388060 | B/L No. HDMU GABK3483769 |
|---|---|---|
| ALL-NEW INC. 4201 FM 1960 W STE 218 HOUSTON, TX 77068 | Export References 12631 | |

| Consignee (complete name and address) | Forwarding Agent References |
|---|---|
| S.V.C. 2017 INTERNATIONAL CO.,LTD NO.88/27 MOO 12, BANGPLA, BANGPLI,SAMUTPRAKARN PH 026763501 ,0873367448 FENIONUK@HOTMAIL.COM | |

| Notify Party (complete name and address) | Point and Country of Origin |
|---|---|
| S.V.C. 2017 INTERNATIONAL CO.,LTD NO.88/27 MOO 12, BANGPLA, BANGPLI,SAMUTPRAKARN PH 026763501 ,0873367448 FENIONUK@HOTMAIL.COM | Domestic Routing/Export Instructions |

| Pre-Carriage by | Place of Receipt* SAVANNAH, GA | |
|---|---|---|
| Ocean Vessel/Voyage/Flag MSC LISBON V 809W | Port of Loading SAVANNAH, GA | Onward Inland Routing |
| Port of Discharge BANGKOK, THAILAND | For Transshipment to | Place of Delivery* BANGKOK, THAILAND | Final Destination(For the Merchants Ref.) |

PARTICULARS FURNISHED BY SHIPPER

| Container No./Seal No. Marks and Numbers | No.of Containers or Other Pkgs | Description of Packages and Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| S.Y.C. | SHIPPER'S LOAD & COUNT X20180222839561 2 X 40'HC CONTAINERS 76 BALES PLASTIC SCRAP FREIGHT PREPAID | | 46,466.0000 KGS | |
| | HDMU6524408/3359085    DC 4H    HDMU6714630/128974      DC 4H | | | |

| Total Number of Containers or Packages (in words) | ONE HUNDRED AND EIGHTEEN TOTAL BALE | | | |
|---|---|---|---|---|

| Freight & Charges FREIGHT AS ARRANGED | Rate | Unit | Prepaid | Collect |
|---|---|---|---|---|

| Declared Value ( Optional )      US $ | Total | | |
|---|---|---|---|

1. This Sea Waybill shall have effect subject to any legislation that enacts the International Convention for the Unification of Certain Rules Relating to Bills of Lading dated Brussels 25 August 1924 as amended by the Protocol signed at Brussels on 23 February 1968 ("Hague-Visby Rules"), provided that such legislation is compulsorily applicable in the country where this Sea Waybill is issued or goods are to be delivered, but if there is no such compulsorily applicable legislation, the terms of the Hague-Visby Rules shall apply.
1A. Notwithstanding the paragraph 1 hereof, if this Sea Waybill covers Goods moving to or from ports of the United States in foreign trade, or if United States law is otherwise compulsorily applicable, then carriage of such Goods shall be subject to the provisions of the United States Carriage of Goods by Sea Act, 1936, and any amendments thereto (hereinafter "U.S. COGSA"), the terms of which are incorporated in this Sea Waybill, and the provisions of U.S. COGSA shall govern prior to loading on and subsequent to the discharge from the Vessel and throughout the time when the Goods are in the custody of the Carrier or any Subcontractor including all stages of Intermodal Transportation.
2. This Sea Waybill is not a document of title and the Carrier is entitled to deliver goods without presentation of this Sea Waybill.
3. Subject to the foregoing paragraphs, all the terms and conditions, including but not limited to exceptions, defences and liberties, of the Carrier's Standard Bill of Lading, which will be made available upon request, shall be deemed to be incorporated herein with logical amendments.
* Applicable only when this document is used as an intermodal transport document

| Number of Original B(s)/L NII.EE(3) | On Board Date MAR. 01,2018 |
|---|---|
| (OBD : 20180301) | |
| Dated at          MAR. 01,2018 | |
| HYUNDAI MERCHANT MARINE CO.,LTD.AS CARRIER | |
| By | |

A-3

A8

NON-NEGOTIABLE COPY
Printed via GAUS

**SEA WAYBILL**



HYUNDAI
MERCHANT MARINE CO., LTD.

| Shipper/Exporter (complete name and address) | | Document No. | B/L No. HDMU |
|---|---|---|---|
| ALL-NEW INC.<br>4201 FM 1960 W STE 218<br>HOUSTON, TX 77068 | | GALB332241 | GAWB3490436 |
| | | Export References<br>X20180312876311 | |

| Consignee (complete name and address) | Forwarding Agent References |
|---|---|
| S.Y.C. 2017 INTERNATIONAL CO.,LTD<br>NO.88/27 MOO 12, BANGPLA,<br>BANGPLI,SAMUTPRAKARN<br>PH 026763501 ,0873367448<br>FENIONUK@HOTMAIL.COM | |
| | Point and Country of Origin |

| Notify Party (complete name and address) | Domestic Routing/Export Instructions |
|---|---|
| S.Y.C. 2017 INTERNATIONAL CO.,LTD<br>NO.88/27 MOO 12, BANGPLA,<br>BANGPLI,SAMUTPRAKARN<br>PH 026763501 ,0873367448<br>FENIONUK@HOTMAIL.COM | |

| Pre-Carriage by | Place of Receipt*<br>ATLANTA, GA | |
|---|---|---|
| Ocean Vessel/Voyage/Flag<br>KAETHE P V 812W | Port of Loading<br>SAVANNAH, GA | Onward Inland Routing |
| Port of Discharge<br>BANGKOK, THAILAND | For Transhipment to | Place of Delivery*<br>BANGKOK, THAILAND | Final Destination(For the Merchants Ref.) |

**PARTICULARS FURNISHED BY SHIPPER**

| Container No./Seal No.<br>Marks and Numbers | No of Containers<br>or other Pkgs | Description of Packages and Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| S.Y.C. | | SHIPPER'S LOAD & COUNT<br>AES ITN # X20180312876311<br>1 X 40' HC CONTAINER<br>38 BALES<br>PLASTIC SCRAP<br>*** DELIVER TERMINAL : PAT ONLY<br><br>FREIGHT PREPAID<br>***EXPRESS BILL OF LADING ***<br>COPY NON-NEGOTIABLE B/L RELEASE PROCEDURES<br><br><br>DFSU6651488/UL-1819754  DC 4H | 20,294.0000<br>KGS | |
| Total Number of Containers<br>or Packages (in words) | ONE FORTY HC CONTAINER ONLY | | | |

| Freight & Charges<br>FREIGHT AS ARRANGED | Rate | Unit | Prepaid | Collect |
|---|---|---|---|---|

| Declared Value<br>( Optional )    US $ | | Total | | |
|---|---|---|---|---|

Number of Original B(s)/L
NIL

On Board Date
MAR. 20,2018

(OBD : 20180320)

Dated at    MAR. 20,2018

HYUNDAI MERCHANT MARINE CO.,LTD.AS CARRIER

By

A - 4

A9

NON-NEGOTIABLE COPY
Printed via GAUS

**SEA WAYBILL**



**HYUNDAI** MERCHANT MARINE CO., LTD.

| Shipper/Exporter (complete name and address) | | Document No. GASV389138 | B/L No. HDMU GAWB3499628 |
|---|---|---|---|
| ALL-NEW INC. 4201 FM 1960 W SUITE 218 HOUSTON, TX 77068 | | Export References X20180404233655 12663 | |

| Consignee (complete name and address) | Forwarding Agent References |
|---|---|
| POLYTHAI RESOURCES CO.,LTD NO.77 MOO4,THADTHONG,BOTHIONG, CHUNBURI PH:026763501 0873367448 EMAIL:FENIONUK@HOTMAIL.COM LEK@MAOJIELOGISTICS.COM WARAYA23@HOTMAIL.COM | |

| Notify Party (complete name and address) | |
|---|---|
| POLYTHAI RESOURCES CO.,LTD NO.77 MOO4,THADTHONG,BOTHIONG, CHUNBURI PH:026763501 0873367448 EMAIL:FENIONUK@HOTMAIL.COM LEK@MAOJIELOGISTICS.COM WARAYA23@HOTMAIL.COM | Point and Country of Origin HASLET, TX |
| | Domestic Routing/Export Instructions |

| Pre-Carriage by | Place of Receipt* SAVANNAH, GA | |
|---|---|---|
| Ocean Vessel/Voyage/Flag GJERTRUD MAERSK V 814E | Port of Loading SAVANNAH, GA | Onward Inland Routing |
| Port of Discharge BANGKOK, THAILAND | For Transshipment to | Place of Delivery* BANGKOK, THAILAND | Final Destination(For the Merchants Ref) |

**PARTICULARS FURNISHED BY SHIPPER**

| Container No./Seal No Marks and Numbers | No.of Containers or Other Pkgs | Description of Packages and Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| POLYTHAI | SHIPPER'S LOAD & COUNT AES ITN # X20180404233655 6 X 40' HC CONTAINERS 256 BALES PLASTIC SCRAP **DELIVER TERMINAL : PAT TERMINAL ONLY FREIGHT PREPAID ***EXPRESS BILL OF LADING *** COPY NON-NEGOTIABLE B/L RELEASE PROCEDURES CONTAINER   SEAL   PACKAGE   WEIGHT BSIU9231780  128962  63 BALES 27525 KGS DFSU7370438  128968  32 BALES 18162 KGS | | 114,233.0000 KGS |

| Total Number of Containers or Packages (in words) | SIX FORTY FT HC CONTAINERS | | | | | |
|---|---|---|---|---|---|---|
| Freight & Charges FREIGHT AS ARRANGED | | Rate | Unit | Prepaid | | Collect |

| Declared Value (Optional) US $ | | Total | | | |
|---|---|---|---|---|---|

1. This Sea Waybill shall have effect subject to any legislation that enacts the International Convention for the Unification of Certain Rules Relating to Bills of Lading dated Brussels 25 August 1924 as amended by the Protocol signed at Brussels on 23 February 1968 ("Hague-Visby Rules"), provided that such legislation is compulsorily applicable in the country where this Sea Waybill is issued or goods are to be delivered, but if there is no such compulsorily applicable legislation, the terms of the Hague-Visby Rules shall apply.
2. Notwithstanding the paragraph 1 hereof, if this Sea Waybill covers Goods moving to or from ports of the United States in foreign trade, or if United States law is otherwise compulsorily applicable, then carriage of such Goods shall be subject to the provisions of the United States Carriage of Goods by Sea Act, 1936, and any amendments thereto (hereinafter "U.S. COGSA"), the terms of which are incorporated in this Sea Waybill, and the provisions of U.S. COGSA shall govern prior to loading on and subsequent to the discharge from the Vessel and throughout the time when the Goods are in the custody of the Carrier or any Subcontractor including all stages of the inland transportation.
3. This Sea Waybill is not a document of title and the Carrier is entitled to deliver goods without presentation of this Sea Waybill.
4. Subject to the foregoing paragraphs, all the terms and conditions, including but not limited to exceptions, defences and liberties, of the Carrier's Standard Bill of Lading, which will be made available upon request, shall be deemed to be incorporated herein with logical amendments.
*Applicable only when this document is used as an intermodal transport document.

| Number of Original B(s)/L NIL | | On Board Date APR. 14,2018 |
|---|---|---|
| | (OBD : 20180414) | |
| Dated at          APR. 14,2018 | HYUNDAI MERCHANT MARINE CO.,LTD.AS CARRIER | |
| | By | |

A-5

A 10

NON-NEGOTIABLE COPY
Printed via GAUS

**SEA WAYBILL**



HYUNDAI
MERCHANT MARINE CO., LTD.

| Shipper/Exporter (complete name and address) | Document No. | B/L No. HDMU |
|---|---|---|
| ALL-NEW INC.<br>4201 FM 1960 W<br>SUITE 218<br>HOUSTON, TX 77068 | GASV389034<br>Export References<br>X20180423301916<br>12681B | GAWB3507057 |

| Consignee (complete name and address) | Forwarding Agent References |
|---|---|
| THAI MANGKORN PLASTIC INDUSTRY CO.,<br>LTD. 333/5 M.4 PREKRASA,<br>MUANGSAMUTPRAKARN,SAMUTPRAKARN<br>TEL:026763501 0873367448<br>EMAIL:FENFENIONUK@HOTMAIL.COM<br>HTLIAO123@HOTMAIL.COM | |

| Notify Party (complete name and address) | Point and Country of Origin |
|---|---|
| THAI MANGKORN PLASTIC INDUSTRY CO.,<br>LTD. 333/5 M.4 PREKRASA,<br>MUANGSAMUTPRAKARN,SAMUTPRAKARN<br>TEL:026763501 0873367448<br>EMAIL:FENFENIONUK@HOTMAIL.COM<br>HTLIAO123@HOTMAIL.COM | HASLET, TX<br>Domestic Routing/Export Instructions |

| Pre-Carriage by | Place of Receipt*<br>ATLANTA, GA | |
|---|---|---|
| Ocean Vessel/Voyage/Flag<br>MAERSK ALGOL V 818E | Port of Loading<br>SAVANNAH, GA | Onward Inland Routing |
| Port of Discharge<br>BANGKOK, THAILAND | For Transshipment to | Place of Delivery*<br>BANGKOK, THAILAND | Final Destination(For the Merchants Ref) |

**PARTICULARS FURNISHED BY SHIPPER**

| Container No./Seal No.<br>Marks and Numbers | No of Containers<br>or Other Pkgs | Description of Packages and Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| THAI MANGKORN | SHIPPER'S LOAD & COUNT<br>AES ITN # X20180423307916<br>2 X 40' HC CONTAINER ONLY<br>71 BALES<br>PLASTIC SCRAP<br>**DELIVER TERMINAL : PAT TERMINAL ONLY<br><br>FREIGHT PREPAID<br>***EXPRESS BILL OF LADING ***<br>COPY NON-NEGOTIABLE B/L RELEASE PROCEDURES<br><br>CONTAINER   SEAL   UNIT   WEIGHT<br>SEGU6013895 UL-1819791 37 BALES 19532 KGS<br>TCNU5130044 UL-1819790 34 BALES 17318 KGS | 36,850.0000<br>KGS | |

| Total Number of Containers<br>or Packages (in words) | TWO FORTY FOOT HC CONTAINERS ONLY |
|---|---|

| Freight & Charges<br>FREIGHT AS ARRANGED | Rate | Unit | Prepaid | Collect |
|---|---|---|---|---|

| Declared Value<br>( Optional )   US $ | Total | |
|---|---|---|

Number of Original B(s)/L
NIL

(OBD : 20180507)
Dated at   MAY 07,2018

On Board Date
MAY 07,2018

HYUNDAI MERCHANT MARINE CO.,LTD.AS CARRIER

By

A-6                     A11

NON-NEGOTIABLE COPY
Printed via GAUS

**BILL OF LADING**



HYUNDAI
MERCHANT MARINE CO., LTD.

| Shipper/Exporter (complete name and address) | Document No. | GASV389139 | B/L No. HDMU GAWB3502482 |
|---|---|---|---|
| ALL-NEW INC.<br>4201 FM 1960 W STE  218<br>HOUSTON, TX 77068 | Export References<br>X20180405325686<br>12690A | | |

| Consignee (complete name and address) | Forwarding Agent References |
|---|---|
| S.Y.C. 2017 INTERNATIONAL CO.,LTD<br>NO.88/27 MOO 12, BANGPLA,<br>BANGPLI,SAMUTPRAKARN<br>PH 026763501 ,0873367448<br>FENIONUK@HOTMAIL.COM | |
| | Point and Country of Origin |

| Notify Party (complete name and address) | Domestic Routing/Export Instructions |
|---|---|
| S.Y.C. 2017 INTERNATIONAL CO.,LTD<br>NO.88/27 MOO 12, BANGPLA,<br>BANGPLI,SAMUTPRAKARN<br>PH 026763501 ,0873367448<br>FENIONUK@HOTMAIL.COM | |

| Pre-Carriage by | Place of Receipt*<br>SAVANNAH, GA | | |
|---|---|---|---|
| Ocean Vessel/Voyage/Flag<br>MAERSK ALFIRK V 815E | Port of Loading<br>SAVANNAH, GA | Onward Inland Routing | |
| Port of Discharge<br>LAEM CHABANG, THAILAND | For Transshipment to | Place of Delivery*<br>LAEM CHABANG, THAILAND | Final Destination(For the Merchants Ref.) |

**PARTICULARS FURNISHED BY SHIPPER**

| Container No./Seal No.<br>Marks and Numbers | No.of Containers<br>or Other Pkgs | Description of Packages and Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| | | SHIPPER'S LOAD & COUNT<br>AES ITN # 20180405325686<br>4 X 40' HC CONTAINERS | | 79,162.0000<br>KGS |
| S.Y.C. | | TOTAL 157 BALES<br>PLASTIC SCRAP | | |
| | | FREIGHT PREPAID<br>***EXPRESS BILL OF LADING ***<br>"COPY NON-NEGOTIABLE B/L RELEASE PROCEDURES"<br>CONTAINER    SEAL    UNIT    WEIGHT<br>BMOU4147060 128955 32 BALES 18480 KGS<br>CAIU8426015 128956 36 BALES 18915 KGS<br>DFSU6948157 128954 41 BALES 19813 KGS<br>TRLU7165592 128952 48 BALES 21954 KGS | | |

| Total Number of Containers<br>or Packages (in words) | FOUR FORTY FOOT HC CONTAINERS ONLY | | | |
|---|---|---|---|---|

| Freight & Charges<br>FREIGHT AS ARRANGED | Rate | Unit | Prepaid | Collect |
|---|---|---|---|---|
| | | | | |

| Declared Value<br>( Optional )    =US $ | | Total | | |
|---|---|---|---|---|

**(PACKAGE LIMITATION CLAUSE)**
Section 4 (5) of U.S. Carriage of Goods by Sea Act-1936.Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the Bill of Lading and additional freight has been paid as required. This declaration, if embodied in the Bill of Lading, shall be prima facie evidence, but shall not be conclusive on the carrier. THIS CLAUSE SHALL APPLY ONLY TO GOODS MOVING TO OR FROM PORTS OF UNITED STATES.
IN ACCEPTING THIS BILL OF LADING, the shipper, owner and consignee of the goods, and the holder of the Bill of Lading expressly accept and agree to all its stipulations, exceptions and conditions, whether written, stamped or printed, as fully as if signed by such shipper, owner, consignee and/or holder. No agent is authorized to waive any of the provisions of the clauses IN WITNESS WHEREOF, the master or agent of the said ship has affirmed to Bill of Lading, all of this tenor and date, ONE of which being accomplished, the others to stand void.
* Applicable only when this document is used as an intermodal transport Bill of Lading

| Number of Original B(s)/L.<br>NIL | | On Board Date<br>APR. 16,2018 |
|---|---|---|
| | (OBD : 20180416) | |
| Dated at    APR. 16,2018 | | |
| HYUNDAI MERCHANT MARINE CO.,LTD.AS CARRIER | | |
| By | | |

A-7

A12

NON-NEGOTIABLE COPY
Printed via GAUS

**SEA WAYBILL**



HYUNDAI
MERCHANT MARINE CO., LTD.

| Shipper/Exporter (complete name and address) | Document No. | B/L No. HDMU |
|---|---|---|
| ALL-NEW INC. 4201 FM 1960 W STE 218 HOUSTON, TX 77068 | VALB301449 Export References | NRWB3486029 |

| Consignee (complete name and address) | Forwarding Agent References |
|---|---|
| S.V.C. 2017 INTERNATIONAL CO.,LTD NO.88/27 MOO 12, BANGPLA, BANGPLI,SAMUTPRAKARN PH 026763501 ,0873367448 FENIONUK@HOTMAIL.COM | |

| Notify Party (complete name and address) | Point and Country of Origin |
|---|---|
| S.V.C. 2017 INTERNATIONAL CO.,LTD NO.88/27 MOO 12, BANGPLA, BANGPLI,SAMUTPRAKARN PH 026763501 ,0873367448 FENIONUK@HOTMAIL.COM | Domestic Routing/Export Instructions |

| Pre-Carriage by | Place of Receipt* NORFOLK, VA | |
|---|---|---|
| Ocean Vessel/Voyage/Flag COLUMBINE MAERSK V 809W | Port of Loading NORFOLK, VA | Onward Inland Routing |
| Port of Discharge LAEM CHABANG, THAILAND | For Transhipment to | Place of Delivery* BANGKOK, THAILAND | Final Destination(For the Merchants Ref.) |

### PARTICULARS FURNISHED BY SHIPPER

| Container No./Seal No. Marks and Numbers | No. of Containers or Other Pkgs | Description of Packages and Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| S.Y.C. | | SHIPPER'S LOAD & COUNT AES ITN #X20180228201877 1 X 40'HC CONTAINER 34 BALES PLASTIC SCRAP  FREIGHT PREPAID ***EXPRESS BILL OF LADING *** COPY NON-NEGOTIABLE B/L RELEASE PROCEDURES"   TEMU7510510/3946856     DC 4H | 17,454.0000 KGS | |

| Total Number of Containers or Packages (in words) | ONE FORTY FOOT HC CONTAINER ONLY |
|---|---|

| Freight & Charges FREIGHT AS ARRANGED | Rate | Unit | Prepaid | Collect |
|---|---|---|---|---|
| | | | | |

| Declared Value ( Optional )   US $ | | Total | |
|---|---|---|---|

1. This Sea Waybill shall have effect subject to any legislation that enacts the International Convention for the Unification of Certain Rules Relating to Bills of Lading dated Brussels 25 August 1924 as amended by the Protocol signed at Brussels on 23 February 1968 ("Hague-Visby Rules"), provided that such legislation is compulsorily applicable in the country where this Sea Waybill is issued or goods are to be delivered, but if there is no such compulsorily applicable legislation, the terms of the Hague/Visby Rules shall apply.
2. Notwithstanding the paragraph 1 hereof, if this Sea Waybill covers Goods moving to or from ports of the United States in foreign trade, or if United States law is otherwise compulsorily applicable, then carriage of such Goods shall be subject to the provisions of the United States Carriage of Goods by Sea Act, 1936, and any amendments thereto (hereinafter "U.S. COGSA"), the terms of which are incorporated in this Sea Waybill, and the provisions of U.S. COGSA shall govern prior to loading on and subsequent to the discharge from the Vessel and throughout the time when the Goods are in the custody of the Carrier or any Subcontractor including all stages of Intermodal Transportation.
3. This Sea Waybill is not a document of title and the Carrier is entitled to deliver goods without presentation of this Sea Waybill.
4. Subject to the foregoing paragraphs, all the terms and conditions, including but not limited to exceptions, defences and liberties, of the Carrier's Standard Bill of Lading, which will be made available upon request, shall be deemed to be incorporated herein with logical amendments.
*Applicable only when this document is used as an Intermodal transport document.

| Number of Original B(s)/L NIL | On Board Date MAR. 12,2018 |
|---|---|
| | (OBD : 20180312) |
| Dated at   MAR. 12,2018 | |

HYUNDAI MERCHANT MARINE CO.,LTD.AS CARRIER

By

A - 8

A13

NON-NEGOTIABLE COPY
Printed via GAUS

**SEA WAYBILL**



**HYUNDAI**
MERCHANT MARINE CO., LTD.

| Shipper/Exporter (complete name and address) | Document No. | B/L No. HDMU |
|---|---|---|
| ALL-NEW INC. 4201 FM 1960 W SUITE 218 HOUSTON, TX 77068 | TXLB412628 | TXWB3494334 |
| | Export References X20180322516011 I2658A | |

| Consignee (complete name and address) | Forwarding Agent References |
|---|---|
| POLYTHAI RESOURCES CO.,LTD NO.7 MOO4,THADTHONG,BOTHONG, CHUNBURI PH:026763501 0873367448 EMAIL:FENIONUK@HOTMAIL.COM | |

| | Point and Country of Origin HASLET, TX |
|---|---|

| Notify Party (complete name and address) | Domestic Routing/Export Instructions |
|---|---|
| POLYTHAI RESOURCES CO.,LTD NO.7 MOO4,THADTHONG,BOTHONG, CHUNBURI PH:026763501 0873367448 EMAIL:FENIONUK@HOTMAIL.COM | |

| Pre-Carriage by | Place of Receipt* HASLET, TX | |
|---|---|---|
| Ocean Vessel/Voyage/Flag HYUNDAI SHANGHAI V 106W | Port of Loading LOS ANGELES, CA | Onward Inland Routing |
| Port of Discharge BANGKOK, THAILAND | For Transshipment to | Place of Delivery* BANGKOK, THAILAND | Final Destination(For the Merchants Ref.) |

**PARTICULARS FURNISHED BY SHIPPER**

| Container No./Seal No. Marks and Numbers | No.of Containers or Other Pkgs | Description of Packages and Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| | | SHIPPER'S LOAD & COUNT AES ITN # X20180322516011 4 X 40' HC CONTAINERS 180 BALES | 77,410.0000 KGS | |
| POLYTHAI SAM | | PLASTIC SCRAP FREIGHT PREPAID ***EXPRESS BILL OF LADING *** "COPY NON-NEGOTIABLE B/L RELEASE PROCEDURES" | | |
| | | CONTAINER    SEAL    PACKAGE    WEIGHT BMOU4140487 F129500 56 BALES 18842 KGS HDMU6516383 F1294992 35 BALES 19785 KGS HMMU6046190 F1294999 44 BALES 19505 KGS TCNU9194284 7816017 45 BALES 19278 KGS | | |
| Total Number of Containers or Packages (in words) | FOUR FORTY FOOT HC CONTAINERS ONLY | | | |

| Freight & Charges FREIGHT AS ARRANGED | Rate | Unit | Prepaid | Collect |
|---|---|---|---|---|
| | | | | |
| Declared Value ( Optional ) : US $ | | Total | | |

1. This Sea Waybill shall have effect subject to any legislation that enacts the International Convention for the Unification of Certain Rules Relating to Bills of Lading dated Brussels 25 August 1924 as amended by the Protocol signed at Brussels on 23 February 1968 (Hague-Visby Rules"), provided that such legislation is compulsorily applicable in the country where this Sea Waybill is issued or goods are to be delivered, but if there is no such compulsorily applicable legislation, the terms of the Hague-Visby Rules shall apply.
2. Notwithstanding the paragraph 1 hereof, if this Sea Waybill covers Goods moving to or from ports of the United States in foreign trade, or of a United States law is otherwise compulsorily applicable, then carriage of such Goods shall be subject to the provisions of the United States Carriage of Goods by Sea Act, 1936, and any amendments thereto (hereinafter "U.S. COGSA"), the terms of which are incorporated in this Sea Waybill, and the provisions of U.S. COGSA shall govern prior to loading on and subsequent to the discharge from the Vessel and throughout the time when the Goods are in the custody of the Carrier or any Subcontractor including at stages of Intermodal Transportation.
3. This Sea Waybill is not a document of title and the Carrier is entitled to deliver goods without presentation of this Sea Waybill.
4. Subject to the foregoing paragraphs, all the terms and conditions, including but not limited to exceptions, defences and liberties, of the Carrier's Standard Bill of Lading, which will be made available upon request, shall be deemed to be incorporated herein with logical amendments.
*Applicable only when this document is used as an intermodal transport document.

| Number of Original B(s)/L NIL | On Board Date MAR. 29,2018 |
|---|---|
| | (OBD : 20180329) |
| Dated at MAR. 29,2018 | |
| | HYUNDAI MERCHANT MARINE CO.,LTD.AS CARRIER |
| By | |

A-9

A 14

NON-NEGOTIABLE COPY
Printed via GAUS

**SEA WAYBILL**



HYUNDAI
MERCHANT MARINE CO., LTD.

| Shipper/Exporter (complete name and address)<br>ALL-NEW INC.<br>4201 FM 1960 W<br>SUITE 218<br>HOUSTON, TX 77068 | Document No.<br>TXLB413757<br>Export References<br>CUSTOMER REF. NO:12634-2 | B/L No. HDMU<br>TXWB3499421 |
|---|---|---|
| Consignee (complete name and address)<br>LONG LUCK PLASTIC AND METAL<br>CO.,LTD.NO.77/7 VILLAGE,MOO 2<br>KHALONG SUB DISTRICT,<br>MUEANG DISTICT<br>SAMUT SAKORN PROVINCE THAILAND | Forwarding Agent References | |
| Notify Party (complete name and address)<br>LONG LUCK PLASTIC AND METAL<br>CO.,LTD.NO.77/7 VILLAGE,MOO 2<br>KHALONG SUB DISTRICT,<br>MUEANG DISTICT<br>SAMUT SAKORN PROVINCE THAILAND | Point and Country of Origin<br>CLEVELAND, OH<br>Domestic Routing/Export Instructions<br>TEL 034-446538<br>FAX 034-446539 | |

| Pre-Carriage by | Place of Receipt*<br>HASLET, TX | | |
|---|---|---|---|
| Ocean Vessel/Voyage/Flag<br>HYUNDAI SINGAPORE V 097W | Port of Loading<br>LOS ANGELES, CA | Onward Inland Routing | |
| Port of Discharge<br>BANGKOK, THAILAND | For Transshipment to | Place of Delivery*<br>BANGKOK, THAILAND | Final Destination(For the Merchants Ref.) |

**PARTICULARS FURNISHED BY SHIPPER**

| Container No./Seal No.<br>Marks and Numbers | No of Containers<br>or Other Pkgs | Description of Packages and Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| | | SHIPPER'S LOAD & COUNT<br>AES ITN # X20180403176658<br>1 X 40' HC CONTAINER<br>31 BALES<br>PLASTIC SCRAP<br>**** DELIVER TERMINAL: PAT ONLY | 19,529.0000<br>KGS | |
| LLPM<br>***EXPRESS BILL<br>"COPY NON-NEGOT | | FREIGHT PREPAID<br>OF LADING ***<br>IABLE B/L RELEASE PROCEDURES" | | |
| | HDMU6830202/1276576 | DC 4H | | |

| Total Number of Containers<br>or Packages (in words) | ONE FORTY FOOT HC CONTAINER ONLY |
|---|---|

| Freight & Charges<br>FREIGHT AS ARRANGED | Rate | Unit | Prepaid | Collect |
|---|---|---|---|---|
| | | | | |

| Declared Value<br>( Optional )   US $ | | Total | | |
|---|---|---|---|---|

1. This Sea Waybill shall have effect subject to any legislation that enacts the International Convention for the Unification of Certain Rules Relating to Bills of Lading dated Brussels 25 August 1924 as amended by the Protocol signed at Brussels on 23 February 1968 (Hague-Visby Rules"), provided that such legislation is compulsorily applicable in the country where this Sea Waybill is issued or goods are to be delivered, but if there is no such compulsorily applicable legislation, the terms of the Hague-Visby Rules shall apply.
2. Notwithstanding the paragraph 1 hereof, if the Sea Waybill covers Goods moving to or from ports of the United States in foreign trade, or if United States law is otherwise compulsorily applicable, then carriage of such Goods shall be subject to the provisions of the United States Carriage of Goods by Sea Act, 1936, and any amendment thereto (hereinafter "U.S. COGSA"), the terms of which are incorporated in this Sea Waybill, and the provisions of U.S. COGSA shall govern prior to loading on and subsequent to the discharge from the Vessel and throughout the time when the Goods are in the custody of the Carrier or any Subcontractor including all stages of Intermodal Transportation.
3. This Sea Waybill is not a document of title and the Carrier is entitled to deliver goods without presentation of this Sea Waybill.
4. Subject to the foregoing paragraphs, all the terms and conditions, including but not limited to exceptions, defences and liberties, of the Carrier's Standard Bill of Lading, which will be made available upon request, shall be deemed to be incorporated herein with logical amendments.
*Applicable only when this document is used in an intermodal transport document

| Number of Original B(s)/L<br>NIL | On Board Date<br>APR. 12,2018 |
|---|---|
| (OBD : 20180412) | |
| Dated at<br>APR. 12,2018 | |
| HYUNDAI MERCHANT MARINE CO.,LTD.AS CARRIER | |
| By | |

A-10

A15

NON-NEGOTIABLE COPY
Printed via GAUS

**SEA WAYBILL**


HYUNDAI
MERCHANT MARINE CO., LTD.

| Shipper/Exporter (complete name and address) | Document No. | B/L No. HDMU |
|---|---|---|
| ALL-NEW INC. 4201 FM 1960 W SUITE 218 HOUSTON, TX 77068 | TXLB413758 | TXWB350Z489 |

Export References
X20180411621863
12658F

| Consignee (complete name and address) | Forwarding Agent References |
|---|---|
| POLYTHAI RESOURCES CO.,LTD NO.7 MOO4,THADTHONG,BOTHONG, CHUNBURI PH:026763501 0873367448 EMAIL:FENIONUK@HOTMAIL.COM | |

Point and Country of Origin
HASLET, TX

| Notify Party (complete name and address) | Domestic Routing/Export Instructions |
|---|---|
| POLYTHAI RESOURCES CO.,LTD NO.7 MOO4,THADTHONG,BOTHONG, CHUNBURI PH:026763501 0873367448 EMAIL:FENIONUK@HOTMAIL.COM | |

| Pre-Carriage by | Place of Receipt* HASLET, TX | |
|---|---|---|
| Ocean Vessel/Voyage/Flag HYUNDAI TOKYO V 107W | Port of Loading LOS ANGELES, CA | Onward Inland Routing |
| Port of Discharge BANGKOK, THAILAND | For Transshipment to | Place of Delivery* BANGKOK, THAILAND | Final Destination(For the Merchants Ref.) |

### PARTICULARS FURNISHED BY SHIPPER

| Container No./Seal No. Marks and Numbers | No. of Containers or Other Pkgs | Description of Packages and Goods | Gross Weight | Measurement |
|---|---|---|---|---|
| | SHIPPER'S LOAD & COUNT AES ITN # X20180411621863 2 X 40' HC CONTAINERS 111 BALES PLASTIC SCRAP | | 39,137.0000 KGS | |
| POLYTHAI SAM | **DELIVER TERMINAL : PAT TERMINAL ONLY FREIGHT PREPAID ***EXPRESS BILL OF LADING *** "COPY NON-NEGOTIABLE B/L RELEASE PROCEDURES" | | | |
| CONTAINER HDMU6544370 TCNU7409716 | SEAL    PACKAGE   WEIGHT 7876060 62 BALES 19569 KGS 7876044 49 BALES 19568 KGS | | | |

| Total Number of Containers or Packages (in words) | TWO FORTY FOOT HC CONTAINERS ONLY |
|---|---|

| Freight & Charges FREIGHT AS ARRANGED | Rate | Unit | Prepaid | Collect |
|---|---|---|---|---|
| | | | | |

| Declared Value ( Optional )   : US $ | | Total | | |
|---|---|---|---|---|

1. The Sea Waybill shall have effect subject to any legislation that enacts the International Convention for the Unification of Certain Rules Relating to Bills of Lading dated Brussels 25 August 1924 as amended by the Protocol signed at Brussels on 23 February 1968 ("Hague-Visby Rules"), provided that such legislation is compulsorily applicable in the country where this Sea Waybill is issued or goods are to be delivered, but if there is no such compulsorily applicable legislation, the terms of the Hague-Visby Rules shall apply.
2. Notwithstanding the paragraph 1 hereof, if this Sea Waybill covers Goods moving to or from ports of the United States in foreign trade, or if United States law is otherwise compulsorily applicable, then carriage of such Goods shall be subject to the provisions of the United States Carriage of Goods by Sea Act, 1936, and any amendments thereto (hereinafter "U.S. COGSA"), the terms of which are incorporated in this Sea Waybill, and the provisions of U.S. COGSA shall govern prior to loading on and subsequent to the discharge from the vessel and throughout the time when the Goods are in the custody of the Carrier or any Subcontractor including all stages of Intermodal Transportation.
3. This Sea Waybill is not a document of title and the Carrier is entitled to deliver goods without presentation of this Sea Waybill.
4. Subject to the foregoing paragraphs, all the terms and conditions, including but not limited to exceptions, defences and liberties, of the Carrier's Standard Bill of Lading, which will be made available upon request, shall be deemed to be incorporated herein with logical amendments.
* Applicable only when this document is used in an intermodal transport document

| Number of Original B(s)/L NIL | On Board Date APR. 20,2018 |
|---|---|

(OBD : 20180420)

Dated at    APR. 20,2018

HYUNDAI MERCHANT MARINE CO.,LTD.AS CARRIER

By

A - 11

A 16

**EXHIBIT B**



# CONTAINER BILL OF LADING

Received by the Carrier or Subcontractor from the Merchant in apparent good order and condition unless otherwise indicated, the Goods, or the containers or packages said to contain the Goods, to be carried subject to all the terms on the face and back of this Bill of Lading, from the place of receipt or the port of loading to the port of discharge or place of delivery, there to be delivered. If required by the Carrier, this Bill of Lading duly endorsed must be surrendered in exchange for the Goods or delivery order.

## 1.  DEFINITIONS

When used in this Bill of Lading :

(A) "Carrier" means Hyundai Merchant Marine Co., Ltd., the Vessel, and the Vessel's owners, charterers, managers, and operators.

(B) "Goods" means the cargo described on the face of this Bill of Lading and, if the cargo is in a container or containers supplied or furnished by or on behalf of the Merchant, includes the container or containers as well.

(C) "Intermodal Transportation" means carriage of the Goods by sea and land transportation under a single Bill of Lading.

(D) "Laden on Board" or similar words endorsed on this Bill of Lading means that the Goods have been loaded on board the Vessel or are in the custody of the Carrier or Subcontractor at the port of loading; and, in the event of Intermodal Transportation if the originating carrier is a Subcontractor, means that the Goods have been loaded on board rail cars or other means of inland carriage and are in the custody of a Subcontractor.

(E) "Loss of or Damage to the Goods" includes allegations and/or claims for loss of or damage to the Goods or in connection with the Goods, and also includes allegations and/or claims for misdelivery, nondelivery, or economic loss due to delay.

(F) "Merchant" includes the shipper, consignor, consignee, owner, and receiver of the Goods, and the holder of this Bill of Lading, all of whom shall be jointly and severally liable to the Carrier for the payment of all freight, demurrage, damages for detention, and for the performance of the obligations of any of them under this Bill of Lading or any charter party described in the face of this Bill of Lading.

(G) "Package" includes containers, vans, trailers, pallets, vehicles, and similar packaged units of any description, but not Goods shipped in bulk.

(H) "Subcontractor" includes stevedores, longshoremen, lighterers, terminal operators, warehousemen, truckers, railroads, agents, and any person, corporation or other legal entity that performs any of the Carrier's obligations under this Bill of Lading (whether or not in direct privity of contract with the Carrier), and includes the Subcontractor's own Subcontractor(s).

(I) "Vessel" includes the vessel on the face of this Bill of Lading and any ship, barge, feeder vessel or other means of transport that is substituted, in whole or in part, for that vessel.

## 2.  CLAUSE PARAMOUNT

(A) Except as provided in (B) below, the International Convention for the Unification of Certain Rules of Law relating to Bills of Lading signed at Brussels on 24 August 1924 ("the Hague Rules") as amended by the

B 17



Protocol signed at Brussels on 23 February 1968 ("the Hague-Visby Rules") and as enacted in the country of shipment shall apply to this Bill of Lading. When the Hague-Visby Rules are not enacted in the country of shipment, the corresponding legislation of the country of destination shall apply. When there is no enactment of the Hague-Visby Rules in the country of shipment and destination, the Hague-Visby Rules shall apply to this Bill of Lading. The Protocol signed at Brussels on 21 December 1979 ("the SDR Protocol 1979") shall apply where the Hague-Visby Rules apply, whether mandatorily or by this Contract.

(B) If this Bill of Lading covers Goods moving to or from ports of the United States in foreign trade, or if United States law is otherwise compulsorily applicable, then carriage of such Goods shall be subject to the provisions of the United States Carriage of Goods by Sea Act, 1936, and any amendments thereto (hereinafter "U.S. COGSA"), the terms of which are incorporated in this Bill of Lading, and the provisions of U.S. COGSA shall govern prior to loading on and subsequent to the discharge from the Vessel and throughout the time when the Goods are in the custody of the Carrier or any Subcontractor including all stages of Intermodal Transportation.

**3.  Exemptions; Defenses**

(A) Nothing in this Bill of Lading shall limit or deprive the Carrier of any rights, defenses, exemptions, limitations, conditions, immunities, liberties or statutory protections authorized by the applicable laws, statutes, or regulations of any country.

(B) The rights, defenses, exemptions, limitations, conditions, immunities, liberties and statutory protections provided in or incorporated in this Bill of Lading, governing law, and any relevant charter party shall apply in any action against the Carrier, whether the action is founded in contract, in tort, or otherwise.

**4.  Subcontracting; Rights, and Defenses of Subcontractors**

(A) The Carrier shall be entitled to subcontract on any terms the whole or any part of the loading, discharge, handling, storage, stowage, carriage, custody or care of the Goods, including all stages of Intermodal Transportation, and any duty undertaken by the Carrier in relation to the Goods.

(B) If any claim is made by the Merchant against any Subcontractor, the Subcontractor and the agents of each shall have the benefit of all rights, defenses, exemptions, limitations, conditions, immunities, liberties and statutory protections in this Bill of Lading benefiting the Carrier as if the provisions were expressly for the benefit of the Subcontractor to the fullest extent permitted by the law applicable to Himalaya Clauses.

**5.  RESPONSIBILITY FOR LOSS OR DAMAGE**

(A) Insofar as this Bill of Lading is used for Port-to-Port transportation of the Goods, the Carrier shall not be liable for Loss of or Damage to the Goods caused before loading or after discharge of the Goods from the Vessel. Any indication of final destination on the face of this Bill of Lading is solely for the Merchant's reference, and the Carrier's responsibility for the Goods shall cease at the time of discharge at the port of discharge. The Carrier, in making arrangements for transportation, storage, or handling before loading or after discharge, acts only as the Merchant's agent and assumes no responsibility therefor. Pre-carriage and on-carriage of the Goods are at the risk and expense of the Merchant.

(B) The provisions (including, but not limited to, all rights, defenses, exemptions, limitations, conditions, immunities, liberties and statutory protections) of the Hague-Visby Rules or U.S. COGSA, whichever one

B 18



is applicable as provided for in Articles 2(A) or (B) above, shall govern at all stages of transport including prior to loading on and subsequent to discharge from the Vessel and throughout the entire time the Goods are in the custody of Carrier or any Subcontractor, including all stages of Intermodal Transportation.

(C) The Carrier does not undertake that the Goods will arrive at any particular time or in time to meet any particular market or use, and the Carrier shall not be liable for any direct or indirect Loss of or Damage to the Goods that is caused through delay.

(D) The Carrier shall not be responsible for any Loss of or Damage to the Goods directly or indirectly caused by or arising from strikes, lock-outs, labour disturbances, trade disputes and/or any Force Majeure Event which is beyond control of Carrier, or anything done in contemplation or furtherance thereof, whether the Carrier is a party thereto or not.

## 6.  ROUTE OF TRANSPORT ; TRANSSHIPMENT ; FORWARDING

(A) At the Carrier's discretion and without notice to the Merchant, the Goods may be carried as a single shipment or as several shipments, by the Vessel named in this Bill of Lading or by any other means of transport by land, water, or air, whether or not owned or operated by the Carrier, and by any route, whether or not such route is the direct, advertised, or customary route.

(B) The Carrier or Subcontractor may discharge the Goods or any part of them at any port or place for transshipment, store them afloat or ashore, and forward them by any means of transport.

(C) If the Goods cannot be found at the port of discharge or place of delivery, or if they be miscarried, when found they may be forwarded to their intended port of discharge or place of delivery, but the Carrier shall not be liable for any Loss of or Damage to the Goods arising from such forwarding.

(D) At the Carrier's option, and without notice to the Merchant, another ship or ships may be substituted for the Vessel named in this Bill of Lading whether or not the substituted ship or ships is owned or operated by the Carrier or arrives or departs before or after the Vessel named in this Bill of Lading.

(E) Actions the Carrier takes under this Article 6 shall be deemed to be included within the contractual carriage and such actions, or consequences resulting therefrom, shall not be considered a deviation. Should the Carrier be held liable in respect of such action, the Carrier shall be entitled to the full benefit of all rights, defenses, exemptions, limitations, conditions, immunities, liberties and statutory protections contained in this Bill of Lading.

## 7.  LIBERTIES

(A) In any situation, whether or not existing or anticipated before commencement of the transport, which in the judgment of the Carrier or Subcontractor (including but not limited to the Master and any person charged with the transport or safekeeping of the Goods) has given or is likely to give rise to Loss of or Damage to the Goods, danger, personal injury or death, or delay to the Vessel or any property, or has made or is likely to make it unsafe, impracticable, unlawful, or against the interest of the Carrier or the Merchant to commence the transport, to continue the transport, to discharge the Goods at the port of discharge, or to deliver the Goods at the place of delivery, the Carrier or Subcontractor shall be entitled:

(1) to unpack the containers or otherwise dispose of the Goods in such manner as the Carrier may consider advisable, at the risk and expense of the Merchant, and

(2) before the Goods are loaded on the Vessel or other means of transport, to cancel the contract of carriage without compensation and to require the Merchant to take custody of the Goods and, upon the

B 19



Merchant's failure to do so, to store the Goods at a place selected by the Carrier, at the risk and expense of the Merchant, and

(3) if the Goods are at a place awaiting transshipment, to terminate the transport there and to store the Goods at a place selected by the Carrier or Subcontractor, at the risk and expense of the Merchant, and

(4) if the Goods are on the Vessel or other means of transport, to discharge the Goods or any part of them at a port or place selected by the Carrier or Subcontractor, or to carry them back to the port of loading or place of receipt and there discharge, at the risk and expense of the Merchant. After any action taken according to this Article 7(A), the Carrier shall be free from any responsibility for further custody or carriage of the Goods.

(B) If after any action taken according to Article 7(A) above the Carrier or Subcontractor makes arrangements to store, transship, or forward the Goods, it shall do so only as agent for and at the risk and expense of the Merchant, without any liability in respect of such agency. The Merchant shall reimburse the Carrier forthwith upon demand for all extra freight, charges, and expenses incurred for any actions taken according to Article 7(A), including delay or expense to the Vessel, and the Carrier shall have a lien upon the Goods to that extent.

(C) The situations referred to in Article 7(A) above shall include, but shall not be limited to, those caused by the existence or apprehension of war, hostilities, riots, civil commotions, or other disturbances; closure of, obstacle in, or danger to any port or seaway; blockage, prohibition, or restriction on commerce or trading; quarantine, sanitary, or other similar regulations or restrictions; strikes, lockouts, or other labour troubles whether partial or general and whether or not involving employees of the Carrier or Subcontractor; congestion of port, wharf, sea terminal, or similar place; shortage, absence, or obstacles of labour or facilities for loading, discharge, delivery, or other handling of the Goods; epidemics or diseases; bad weather, shallow water, ice, landslip, or other obstacles to navigation or carriage.

(D) The Vessel shall have liberty to call at any port or place, whether in or out of the direct, advertised, or customary route, once or more often and in any order, and to omit calling at any port or place, whether scheduled or not.

(E) The Vessel shall have liberty, either with or without the Goods on board and either before or after proceeding toward the port of discharge, to adjust compasses and other navigational instruments, make trial trips or tests, drydock whether laden or not, go to repair yards, shift berths, take on fuel or stores at any port, embark or disembark any person, carry contraband, explosives, munitions, and hazardous cargo, sail without pilots, tow or be towed, and save or attempt to save life or property.

(F) The Carrier, in addition to all other liberties provided for in this Article 7, shall have liberty to comply with orders, directions, regulations, or suggestions as to navigation or the carriage or handling of the Goods or the Vessel, given by any actual or purported government or public authority, or by any committee or person having under the terms of any insurance on the Vessel the right to give such order, direction, regulation, or suggestion.

(G) Actions the Carrier takes under this Article 7 shall be deemed to be included within the contractual carriage and such actions, or consequences resulting therefrom, shall not be considered a deviation. Should the Carrier be held liable in respect of such action, the Carrier shall be entitled to the full benefit of all rights, defenses, exemptions, limitations, conditions, immunities, liberties and statutory protections contained in this Bill of Lading.

## 8. DESCRIPTION OF PARTICULARS OF GOODS

Any description on the face of this Bill of Lading of marks, quality, quantity, weight, measure, nature, value, or

B 20



any other particulars of the Goods is as furnished by the Merchant. The Carrier shall not be responsible for the accuracy of any such description and is not bound thereby. The Merchant warrants to the Carrier that the descriptions of particulars that the Merchant furnishes are correct, and the Merchant shall indemnify the Carrier against all loss, damage, expenses, liability, or penalties resulting from inaccuracy of any description of particulars.

## 9.  USE OF CONTAINER

When the Goods are not already packed into a container at the time of receipt by the Carrier or Subcontractor, the Carrier or Subcontractor shall be at liberty to pack and carry the Goods in any type of container.

## 10. OCEAN CARRIER'S CONTAINER

(A) The Merchant assumes full responsibility for and shall indemnify the Carrier against any loss of or damage to the Carrier's containers and other equipment if the loss or damage is caused or occurs while in the possession or control of the Merchant, the Merchant's agents or the Merchant's subcontractors, or other entities engaged by or on behalf of the Merchant.

(B) The Carrier shall not be liable for, and the Merchant shall indemnify, defend and hold the Carrier harmless from, any death of or injuries to persons or loss of or damage to property caused by the Carrier's container or its contents while in the possession or control of the Merchant, his agents, or other carriers engaged by or on behalf of the Merchant.

## 11.  CONTAINER PACKED BY MERCHANT

If the cargo received by the Carrier or Subcontractor is in a container packed by or on behalf of the Merchant:

(A) This Bill of Lading is evidence only of the receipt of the number of containers shown on the face of this Bill of Lading. The condition and particulars of the contents are unknown to the Carrier, and the Carrier accepts no responsibility for the accuracy of the description of the condition or particulars of the contents.

(B) The Merchant warrants:

(1) that the stowage of the contents of the containers and the closing and sealing of the containers, are safe and proper, and

(2) that the containers and their contents are suitable for handling and carriage in accordance with all terms of this Bill of Lading, including Article 14. If the Merchant breaches any of these warranties, the Merchant and not the Carrier shall be responsible for any resulting loss or damage to persons or property (including but not limited to the Vessel and the Goods), and the Merchant shall indemnify and hold the Carrier harmless from any resulting loss or damage to persons or property (including but not limited to the Vessel and the Goods).

(C) The Merchant shall inspect each container before using it, and the Merchant represents that the container is in sound and suitable condition for the transport contracted for in this Bill of Lading. The Carrier shall have no liability for Loss of or Damage to the Goods arising out of the unsuitability of the container if the unsuitability would have been apparent upon reasonable inspection by the Merchant at or before the time of packing the container.

(D) If the container is delivered by the Carrier or Subcontractor with seal(s) intact, such delivery shall be deemed to be full and complete performance of the Carrier's obligations under this Bill of Lading, and the

B 21



Carrier shall not be liable for any Loss of or Damage to the Goods.

(E) The Carrier or Subcontractor shall have the right to open any container, whether packed by the Merchant or not, and to inspect its contents, without notice to the Merchant, at such time and place as the Carrier or Subcontractor may deem necessary, and at the risk and expense of the Merchant.

(F) If any seal on a container is broken by Customs or other authority for inspection of its contents, the Carrier shall not be liable for any resulting Loss of or Damage to the Goods, or any expense.

(G) When a container is stuffed and sealed by the Merchant prior to delivery to and receipt by Carrier or Subcontractor, all statements on this Bill of Lading relating to the contents of the containers, including marks and numbers, number and kind of packages, description, quantity, quality, weight, measure, nature, kind, value or any other particulars are furnished by the Merchant and have not been checked by the Carrier or Subcontractor. The Carrier and Subcontractor do not have facilities to weigh sealed containers at the load port and has neither inspected the contents of, nor weighed the containers. Any reference in this Bill of Lading to Shipped on Board or Clean on Board relates solely to the containers and not to the contents thereof.

## 12.   SPECIAL CARRIAGE OR CONTAINER

(A) The Carrier does not undertake to carry or store the Goods in refrigerated, heated, insulated, ventilated, or any other special hold or container or to carry or store any special container packed by or on behalf of the Merchant, and the Carrier will treat such Goods or container only as ordinary Goods or dry container unless:

　(1) special arrangements for the carriage or storage of such Goods or container have been agreed to in writing between the Carrier and the Merchant,

　(2) such special arrangements are noted on the face of this Bill of Lading, and

　(3) special freight as required has been paid.

(B) The Carrier shall not be liable for any Loss of or Damage to the Goods in a special hold, or in a special container supplied by the Carrier, arising from latent defects, breakdown, or stoppage of the refrigerating or heating machinery, insulation, ship's plant, or other such apparatus of the Vessel or container, provided that the Carrier before and at the beginning of the transport has exercised due diligence to maintain the special hold or container.

(C) The Carrier shall not be responsible for the function of a special container supplied by or on behalf of the Merchant.

(D) If the Goods have been packed into a refrigerated container by the Carrier or Subcontractor, and the particular temperature range requested by the Merchant is inserted on this Bill of Lading, the Carrier or Subcontractor will set the thermostatic controls within the requested temperature range but does not guarantee the maintenance of such temperature inside the container.

(E) If the cargo received by the Carrier or Subcontractor is in a refrigerated container packed by or on behalf of the Merchant, it is the obligation of the Merchant to properly stow the contents and set the thermostatic controls and vents. The Carrier shall not be liable for any Loss of or Damage to the Goods resulting from the Merchant's failure in such obligation, and the Carrier does not guarantee the maintenance of the intended temperature inside the container.

## 13.   DANGEROUS GOODS, CONTRABAND AND ANTI-DRUG

(A) The Carrier will carry Goods of an explosive, inflammable, radioactive, corrosive, damaging, poisonous,

B 22



or dangerous nature only upon the Carrier's approval of a written application by the merchant prior to the carriage of such Goods. Such application must accurately state the name, nature, and classification of the Goods, as well as how they are dangerous and the method of rendering them innocuous, together with the full names and addresses of the shipper and the consignee.

(B) The Merchant shall distinctly and permanently mark the nature and danger of such Goods on the outside of the package or container containing the Goods.

(C) The Merchant shall submit all documents or certificates in connection with such Goods required by any applicable statute or regulation, or by the Carrier.

(D) Whenever it is discovered that the Goods have been received by the Carrier or Subcontractor without compliance with Articles 13(A), (B) or (C) above, or the Goods are found to be contraband or prohibited by any law or regulation, the Carrier shall be entitled to have such Goods rendered innocuous, thrown overboard, discharged, or otherwise disposed of, at the Carrier's discretion and without compensation to the Merchant, and the Merchant shall be liable for and shall indemnify the Carrier against any loss, damage, or liability including loss of freight, and any other expense directly or indirectly arising out of the custody or carriage of such Goods.

(E) The Carrier may exercise the rights conferred upon it under this Article 13(D) whenever Goods received in compliance with Articles 13(A), (B), and (C) above have become dangerous, even if not dangerous when received by the Carrier or Subcontractor.

(F) The Carrier shall not be liable for, and the Merchant shall indemnify, defend and hold the Carrier harmless from any death of or injuries to persons or loss of or damage to the vessel, cargo or other property which may arise from the dangerous nature of the Goods.

(G) In pursuance of the provisions of the U.S. Anti Drug Abuse Act 1986, or any re-enactment thereof, the Carrier warrants that it will exercise the highest degree of care and diligence in preventing unmanifested narcotic drugs and marijuana being loaded or concealed on board the Vessel. The Merchant shall remain responsible for and indemnify the Carrier against all time lost and all expenses incurred, including fines, in the event that unmanifested narcotic drugs and/or marijuana are found in the possession or effects of cargo or package.

## 14.   STOWAGE UNDER AND ON DECK

(A) Goods in containers or vans, or on trailers or chassis, may be carried under deck or on deck. When such Goods are carried on deck the Ocean Carrier shall not be required to mark any statement of "on deck stowage" on the face of this Bill of Lading, any custom to the contrary notwithstanding. Such on deck carriage shall not be considered a deviation.

(B) Goods stowed in poop, forecastle, deck house, shelter deck, passenger space, or any other covered-in space, or stowed in a container wherever placed, shall be deemed to be stowed under deck for all purposes including general average.

(C) Lumber, earth moving equipment, and all other Goods customarily or reasonably carried on deck may at the Carrier's option be carried on deck without notice to the Merchant and without liability of the Carrier for the risks inherent in or incident to such carriage.   When such Goods are carried on deck the Carrier shall not be required to mark any statement of "on deck stowage" on the face of this Bill of Lading, any custom to the contrary notwithstanding. Such on deck carriage shall not be considered a deviation.

(D) In respect of Goods (except in containers) carried on deck and stated on this Bill of Lading to be so carried, all risks of loss or damage from perils inherent in or incident to the custody or carriage of such Goods on deck, including but not limited to Loss of or Damage to the Goods, shall be borne by the

B 23



Merchant, whether or not caused by the Carrier's negligence or the Vessel's unseaworthiness and in all other respects the Carrier shall have the benefit of the provisions of the Hague-Visby Rules or U.S. COGSA, whichever one is applicable as provided for in Articles 2(A) or (B) above, and the terms of this Bill of Lading.

## 15.  LIVE ANIMALS AND PLANTS

With respect to the custody and carriage of live animals and plants, all risks of loss or damage from perils inherent in or incident to such carriage shall be borne by the Merchant, and in all other respects the Carrier shall have the benefit of the provisions of the applicable Hague-Visby Rules or U.S. COGSA, whichever one is applicable as provided for in Articles 2(A) or (B) above, and the terms of this Bill of Lading.

## 16.  VALUABLE GOODS

The Carrier shall not be liable for Loss of or Damage to or in connection with precious metals or stones, chemicals, jewelry, currency, writings, negotiable instruments, securities, documents, works of art, heirlooms, or any other valuable Goods, including Goods having particular value only for the Merchant, unless the Merchant has declared the nature and value of the Goods in writing before receipt of the Goods by the Carrier or Subcontractor, the nature and value of the Goods have been inserted on the face of this Bill of Lading, and additional freight has been paid as required.

## 17.  HEAVY LIFT

(A) The weight of a single piece or package exceeding 2,240 lbs. (one metric ton) gross must be declared by the Merchant in writing before receipt by the Carrier or Subcontractor and must be marked clearly and durably on the outside of the piece or package.

(B) If the Merchant fails in his obligations under this Article 17(A): (1) the Carrier shall not be responsible for any Loss of or Damage to the Goods, (2) the Merchant shall be liable for resulting loss of or damage to any person or property, and (3) the Merchant shall indemnify the Carrier against any resulting loss, damage, or liability suffered by the Carrier.

## 18.  DELIVERY BY MARKS

(A) The Carrier shall not be liable for failure to deliver in accordance with marks unless such marks clearly and durably show upon the Goods, package, or container when the Goods are received by the Carrier or Subcontractor, together with the names of the port of discharge and place of delivery.

(B) The Merchant warrants that the marks on the Goods, packages, and containers correspond to the marks shown on this Bill of Lading and also in all respects comply with all laws and regulations in force at the port of discharge or place of delivery. The Merchant shall indemnify the Carrier against all loss, damage or expenses resulting from inaccuracy or incompleteness of the marks.

(C) Goods that cannot be identified as to marks or numbers, cargo sweepings, liquid residue, and any unclaimed Goods not otherwise accounted for may be allocated for the purpose of completing delivery to the various Merchants of Goods of like character in proportion to any apparent shortage, loss of weight, or damage.

B 24



## 19.  DELIVERY

(A) Loading shall take place as fast as the Vessel is able to load, by day and- if required by the Carrier- also by night, Sundays and holidays. If Goods contracted for shipment are not available, when the Vessel is ready to load, the Carrier is relieved of any obligation to load such Goods, and the Vessel may leave the port without further notice and deadfreight is to be paid. The Carrier is entitled to land and receive the Goods or to appoint a person or a corporation for the landing and reception of the Goods. Whether appointed by the Carrier or not, anybody so acting is the Merchant's representative and the Merchant shall pay current charges whether delivery is taken overside or on quay.   The Merchant must be ready to take delivery of the Goods as soon as the Vessel is ready to deliver as fast as she is able to discharge, by day and, if required by the Carrier, also by night, Sundays and holidays. If the Goods are not taken by the Merchant at the time when the Vessel is entitled to call upon him to take delivery, or if they are not removed alongside the Vessel without delay, the Carrier shall be at liberty at the sole risk and expense of the Merchant to enter the Goods, to move them, to land them on to wharf, quay or into warehouse or to discharge them into craft, bulk, lighters, pack or unpack the container and/or sell them with or without legal authority, and the contract of carriage shall be considered as fulfilled.

(B) The Carrier may at its discretion deliver the Goods at any time at the Vessel's side or at a customhouse, warehouse, wharf, or any other place at the port of discharge or place of delivery shown on the face of this Bill of Lading.

(C) Delivery shall take place upon discharge.

(D) Delivery may be to the Merchant including his own bonded warehouses, to the Customs or other public authority, and the Carrier shall have no further responsibility for the Goods.

(E) If the Goods received by the Carrier or Subcontractor are in containers packed by or on behalf of the Merchant:

    (1) The Carrier shall be responsible only to deliver the total number of containers received. The Ocean Carrier shall not be required to unpack the containers and deliver their contents.

    (2) At the Carrier's discretion and upon the Merchant's request in writing to the Carrier at least 3 days before the scheduled date of arrival of the Vessel at the port of discharge, the containers may be unpacked and their contents delivered by the Carrier in accordance with the written request. In such a case, if the seals of the containers are intact at the time of unpacking, the Carrier's obligations under this Bill of Lading shall be discharged, the Carrier shall not be responsible for any Loss of or Damage to the Goods resulting from such delivery, and the Merchant shall be liable for an appropriate adjustment of the freight and any additional charges incurred.

(F) If the Carrier for its convenience has packed the Goods into a container, the Carrier shall not be required to deliver the Goods in the container. At the Carrier's discretion, and subject to prior arrangement between the Merchant and the Carrier, the Goods may be delivered to the Merchant in the container, in which case if the container is delivered with its seal intact the Carrier's obligations under this Bill of Lading shall be discharged, and the Carrier shall not be responsible for any Loss of or Damage to the Goods.

(G) The Carrier is not responsible to notify, in writing or otherwise, the Merchant or others of the arrival, discharge, or disposition of the Goods, any custom or agreement to the contrary notwithstanding, and notwithstanding any notation on the face of this Bill of Lading that there is a notify party.

## 20.  FIRE

B 25



The Carrier shall not be responsible for any Loss of or Damage to the Goods arising or resulting from fire, even if such Loss of or Damage to the Goods occurs before loading or after discharge of the Goods from the Vessel and whether founded in contract or in tort, unless arising or resulting from willful intention or negligence of the Carrier.

## 21.   GOVERNMENT ORDERS AND CONTINGENCIES

The Carrier shall have liberty to comply with any orders, directions or recommendations as to loading, departure, arrival, routes, ports of call, stoppages, discharge, destination, delivery or otherwise howsoever given by any person acting or purporting to act with the authority of any government, international organization or any department thereof, or by any committee or person having, or purporting to have, under the terms of the insurance on the Vessel, the right to give such orders, directions or recommendations. If by reason of or in compliance with, any such orders, directions or recommendations the Vessel does not proceed to the port or ports originally designated, the Vessel may proceed to any other port which the Carrier or the Master of the Vessel at its discretion may select and there discharge the Goods. If in the opinion of the Carrier or the Master the performance of the transport is or threatens to be unsafe, unlawful or inadvisable by the imminence or existence of war, warlike operations or hostilities, the container may be devanned and/or the Goods may be discharged at the port of loading or at any other port or place at the Carrier's or Master's discretion. If on account of actual or threatening epidemics, quarantine, ice, strikes, lock-outs, labour troubles, interdict, congestion, difficulties and/or any Force Majeure Event beyond the control of the Carrier in loading or discharge the Carrier or the Master at any time is in doubt as to whether the Vessel can safely and without delay or detention, reach, enter or leave the port of loading or reach or enter the port of discharge or there discharge in the usual manner, or proceed thence on the voyage safely or without delay or detention, the container may be devanned and/or the Goods may be discharged at the port of loading or at any other port or place at the Carrier or Master's discretion. In the cases referred to above in this Article 21, the Carrier may at any time postpone the carriage of any part of the Goods contracted for herein till some later date or cancel in whole or in part the contract whether before or after this Bill of Lading is issued. The discharge of the Goods and/or their delivery or other disposition pursuant to any provision of this Article 21 shall constitute complete delivery and performance under this contract and the Carrier shall be freed from any further responsibility.   In the event of any diversion, delay or detention of the Vessel under such circumstances as provided in this Article 21 and/or any services rendered to the Goods hereunder, the Carrier shall be entitled to a reasonable extra compensation and shall have a lien on the Goods for such charges.

## 22.   LIEN ON GOODS

(A) The Carrier shall have a lien on the Goods, any documents relating thereto, or any other cargo or property of the Merchant within the Carrier's custody or control for all freight, deadfreight, demurrage, damages for detention, general average contributions, stevedoring charges, storage, container per diem expenses, and any other sums whatsoever (including costs and attorney fees for recovering the sums) chargeable to the Merchant under this or any other Bill of Lading or any contracts related thereto. The Carrier may foreclose the lien by selling the Goods, without notice to the Merchant, where applicable, privately or by public auction. If proceeds of the sale of the Goods fail to cover the amount due and the costs and fees incurred, the Carrier shall be entitled to recover the deficit from the Merchant.

(B) At the Carrier's sole discretion if the Goods are unclaimed for a reasonable time beyond its free time allowance, or whenever in the Carrier's opinion the Goods will deteriorate or depreciate, the Carrier may

B 26



at its discretion exercise its lien or sell, abandon, or otherwise dispose of such Goods at the risk and expense of the Merchant.

## 23.   FREIGHT AND CHARGES

(A) Freight may be calculated on the basis of the description of particulars furnished by the Merchant, who shall be deemed to have guaranteed to the Carrier the accuracy of the contents, quantity, weight, measure, value, and other particulars as furnished at the time of receipt of the Goods by the Carrier or Subcontractor, but the Carrier, for the purpose of ascertaining the actual particulars, may open the container or package at any time and at the risk and expense of the Merchant. In case of incorrect declaration of any particular, the Merchant shall be liable to the Carrier for:

(1) the balance of freight between the freight charged and that which would have been due had the correct particular been given, plus

(2) expenses incurred in determining the correct particular, plus

(3) as liquidated and ascertained damages, an additional sum equal to the correct freight.

(B) Full freight to the place of delivery shall be completely earned upon loading of the Goods, whether the freight is stated or intended to be prepaid or to be collected at destination. The Carrier shall be entitled to all freight and other charges due hereunder, whether actually paid or not, and to receive and retain such freight and charges regardless whether the Vessel or the Goods be lost, or whether the Carrier takes any of the liberties allowed in this Bill of Lading. Full freight shall be paid on damaged or unsound Goods.

(C) The payment of freight and charges shall be made in full and in cash without any offset or deduction.

(D) Goods received by the Carrier or Subcontractor cannot be taken away or disposed of by the Merchant except upon the Carrier's consent and after payment of full freight and charges due under this Bill of Lading.

(E) If the Goods are not available when the Vessel is ready to load, and unless it is caused by the failure of the Carrier to perform its obligations under this Bill of Lading, dead freight shall be paid by the Merchant.

(F) The Merchant shall be liable for and shall indemnify the Carrier against: (1) all duties, taxes, consular fees, and other charges levied on the Goods, and (2) all fines, damages, and losses sustained by the Carrier in connection with the Goods, including the Merchant's failure to comply with laws and regulations of any public authority in connection with the Goods, or failure to procure consular, board of health, or other certificates to accompany the Goods. The Merchant shall be liable for return freight and charges on any Goods refused exportation or importation by any public authority.

(G) If in the Carrier's or Subcontractor's opinion the Goods are in need of sorting, inspecting, mending, repairing, or reconditioning, or otherwise require protecting or caring for, the Carrier or Subcontractor at its discretion may, as agent for the Merchant, carry out such work at the risk and expense of the Merchant.

(H) Any party performing forwarding services with respect to the Goods shall be considered to be the agent of the Merchant exclusively, and any payment of freight or charges to such party shall not be considered to be payment to the Carrier.

(I) The Merchant shall be liable for Carrier's attorney fees, expenses and costs to collect any freight or charges under this Article 23.

(J) The Merchant shall be responsible for any additional war risks premium arising from the vessel's call at the named discharge port herein and such additional premium shall constitute a charge due hereunder against the Goods pursuant to this Article 23.

B 27



**24.  NOTICE OF CLAIM AND TIME FOR SUIT AGAINST OCEAN CARRIER**

(A) Unless notice of loss of or damage to the Goods and the general nature of such loss or damage is given in writing to the Carrier at the port of discharge or place of delivery before or at the time of delivery of the Goods or, if the loss or damage is not apparent, within 3 days after delivery, the Goods shall be deemed to have been delivered as described on the face of this Bill of Lading.

(B) The Carrier shall be discharged from all liability in respect of the Goods, including but not limited to liability for nondelivery, misdelivery, delay, loss, or damage, unless suit is brought within one year after delivery of the Goods or the date when the Goods should have been delivered. Suit shall not be considered to have been "brought" within the time specified unless process shall have been served on and jurisdiction obtained over the Ocean Carrier within such time.

**25.  LIMITATION OF LIABILITY**

(A) All provisions in this Article 25 apply irrespective of the stage of ocean or inland transport where the Loss of or Damage to the Goods occurred, including prior to loading on and subsequent to discharge from the Vessel and throughout the entire time the Goods are in the custody of Carrier or any Subcontractor, including all stages of Intermodal Transportation.

(B) Subject to Articles 25(C), (D) and (E) below, for the purpose of determining the extent of the Carrier's liability for Loss of or Damage to the Goods, the Merchant agrees that the sound value of the Goods is the Merchant's net invoice cost, plus freight and insurance premium, if paid. The Carrier shall not be liable for any loss of profit or any consequential loss.

(C) Unless the value and nature of the Goods have been declared in writing by the Merchant before shipment and inserted in the Bill of Lading and extra freight has been paid as required by tariff or contract, the Carrier shall not be liable for Loss of or Damage to the Goods in an amount exceeding the following per package or unit limit of liability: (1) For shipments, including intermodal shipments, involving carriage of the Goods to or from a U.S. port, the limit of liability is US$500 per package, or in case of Goods not shipped in packages, US$500 per customary freight unit; or (2) For all other shipments (and/or in any case where a court should rule that the US$500 limit of liability per package or customary freight unit in this Article 25(C)(1) is not enforceable) the limit of liability is the higher of 2 SDR (or equivalent in local currency) per kilogram of gross weight of the Goods or 666.67 SDR (or equivalent in local currency) per package or unit.

(D) If a Declared Value has been inserted on the front of the Bill of Lading and extra freight has been paid as required by tariff or contract but the actual value of the Goods per package or unit exceeds such Declared Value, the value shall nevertheless be deemed to be the Declared Value, and the Carrier's liability, if any, shall not exceed the Declared Value. Any partial Loss of or Damage to the Goods shall be adjusted pro rata on the basis of such Declared Value. If the Declared Value or nature has been knowingly misstated, the Carrier shall not be liable to pay any amount.

(E) Where the Goods have been packed into a container or unitized into a similar article of transport by or on behalf of the Merchant, it is expressly agreed that the number of such containers or similar articles of transport shall be considered to be the number of packages or units for the purpose of the application of the limitation of liability provided for in this Article 25.

**26.  GENERAL AVERAGE; NEW JASON CLAUSE**

B 28



(A) General average shall be adjusted, stated, and settled at the port or place of the Carrier's option and according to the York-Antwerp Rules, 1994 and, as to matters not provided for by those Rules, according to the laws and usages of the port or place of adjustment, and in the currency selected by the Carrier. The general average statement shall be prepared by the adjusters appointed by the Carrier. Average agreement or bond and such cash deposit as the Carrier may deem sufficient to cover the estimated contribution of the Goods and any salvage and special charges thereon, and any other additional securities as the Carrier may require, shall be furnished by the Merchant to the Carrier before delivery of the Goods.

(B) In the event of accident, danger, damage, or disaster before or after commencement of the voyage, resulting from any cause, whether due to negligence or not, for which or for the consequences of which the Carrier is not responsible by statute, contract, or otherwise, the Goods and the Merchant shall jointly and severally contribute with the Carrier in general average to the payment of any sacrifices, loss, or expenses of a general average nature that may be or incurred, and shall pay salvage and special charges incurred in respect of the Goods. If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully and in the same manner as if such salving ship belonged to strangers.

## 27.  BOTH TO BLAME COLLISION

If the Vessel comes into collision with another ship as a result of the negligence of the other ship and any act, neglect, or default of the Master, crew, pilot, or agent of the Vessel or Carrier in the navigation or in the management of the Vessel, the Merchant shall indemnify the Carrier against all loss or liability incurred directly or indirectly to the other ship or her owners or operators insofar as such loss or liability represents Loss of or Damage to the Goods or any claim paid or payable to the Merchant by the other ship or her owners or operators and set-off, recouped, or recovered by the other ship or her owners or operators as part of their claim against the Vessel or the Carrier. The foregoing provisions shall also apply where the owners, operators, or those in charge of any ship or objects other than or in addition to the colliding ships or objects are at fault in respect of a collision, contact, stranding, or other accident.

## 28.  CARRIER'S TARIFF

This Bill of Lading is issued subject to the Carrier's applicable tariff that are incorporated herein. Attention is drawn to the terms and conditions therein relating to free storage time and to additional charges including demurrage, damage for detention, per diem, storage expenses and legal fees, etc.   Copies of the applicable tariff are obtainable from the Carrier or its agent upon request and the Merchant agrees to know and accept such Tariff. In case of inconsistency between this Bill of Lading and the applicable Tariff, this Bill of Lading shall prevail.

## 29.  GOVERNING LAW AND JURISDICTION

(A) Any claims arising from or in connection with or relating to this Bill of Lading shall be exclusively governed by the law of Korea except as otherwise provided herein inclusive of this Article 2 and Article 3(A). Any and all action under or concerning this Bill of Lading (including, but not limited to, Loss of or Damage to the Goods) whether based on breach of contract, tort or otherwise shall be brought before the Seoul Civil District Court in Korea.

B 29



(B) Notwithstanding Article 29(A) above, any and all actions by Carrier against Merchant concerning freight and/or charges may be brought in the courts of any place where Merchant is subject to jurisdiction, and when such place is in the United States, the laws of the United States shall apply to such actions by the Carrier against the Merchant.

## 30.  SUPERSEDING CLAUSE

All agreement or freight engagements for the shipment of the Goods are superseded by this Bill of Lading.

## 31.  SEVERABILITY OF TERMS

The terms of this Bill of Lading are severable, and if any part of terms is declared invalid or unenforceable, the validity or enforceability of any other part of term shall not be affected.

B 30

**EXHIBIT C**

## Rule Information

| Tariff Code | HDMU-046 |
| --- | --- |
| Rule No. | 100-T |
| Rule Name | Cargo Free Time and Demurrage at Destination Ports - THAILAND |
| Filing Date | 2018/03/29 |
| Effective Date | 2018/05/01 |
| Expires | |

## Rule Detail

Filing History

Demurrage (Cargo) Free Time at Thailand

1. Free Time

a. Free Time for cargo and each container, with or without chassis, will commence at 8:00 A.M. on the first business day after the containers discharge from the vessel and it shall expire at midnight on the day stipulated. Multiple container provisions are applicable on ordinary cargo containers provided all such containers are consigned to one Consignee at one Port of destination from one vessel. Free Time will not commence until full Bill of Lading quantity arrival at Bill of Lading port. Following the expiration of container Free Time, the Carrier, at its discretion may remove the cargo from the container to the Port transit sheds in which event the risk and expenses incidental to the removal of such cargo from the container shall be for the account to the cargo owner; the following charge shall apply:

Stripping Charge - U.S. $2.50 (BAHT 50) per Revenue Ton

b. Cargo and Container Free Time at CY

Cargo - Customs of the Port and Port Terminal Tariff apply

Dry, Tank Containers, Open Tops, Flatracks (Subject to Rule 2.18). Free time excludes Saturdays, Sundays and Holidays.

5 Working Days

Refrigerated Containers - Excludes Saturdays, Sundays and Holidays).

C 31

.
3 Working Days
.
c. Cargo Free Time at CFS
Dry Cargo and Tank Con
tainer Cargo (Subject to
Rule 2.18)
.
Customs of the Port and Port Terminal Tariff
apply.
.
Refrigerated, Carrier Owned or Controlled Tank,
Open Top or Flatrack/Platform Container Cargo -
96 Hours, including Saturdays, Sundays and
Holidays.
.
2. Demurrage
a. Cargo and Container Demurrage at CY - (In Thailand
Currency)
.
Cargo - Customs of the Port and Port Terminal
Tariffs apply.
.
Charges after free time expires:
.
Dry Containers
1 - 5 Days
THB 370/20 Container
THB 740/40 Container
THB 1050/45 Container
.
6 + Days
THB 870/20 Container
THB 1440/40 Container
THB 1700/45 Container
.
Reefer Containers
1 - 4 Days
THB 3000/40 RF Container
.
5 - 8 Days
THB $4200/40 RF Container
.
9 + Days
THB 5700/40 RF Container
.
Special Equipment
1 - 5 Days
THB 370/20 Open Top/Flat Rack
THB 740/40 Open Top/Flat Rack
.
6 + Days
THB 870/20 Open Top/Flat Rack
THB 1440/40 Open Top/Flat Rack
.
b. Cargo and Container Demurrage at CFS
Cargo Demurrage - Customs of the Port and Port
Terminal Tariffs apply.

C 32

.

Container Demurrage - As follows:

(1) Dry and Tank Container - (Subject to Rule
2.18) Not Applicable.

.

(2) Refrigerated, Carrier Owned or Controlled
Tank, Open Top or Flatrack/Platform
Containers - 54 Baht per RT as freighted,
per day (24 hour period or fraction thereof),
including Saturdays, Sundays and Holidays,
after the expiration of the equipment Free Time
subject to a maximum 810 Baht per RT.

[Print]   [Close]

C 33

**EXHIBIT D**

| B/L No. | Booking # | Container No | POL | POD | Idling (by 5/29) | Demmurage ($45 per day) |
|---|---|---|---|---|---|---|
| CIWB3505768 | ILLB454370 | TCNU7581366 | LOS ANGELES, CA | BANGKOK, THAILAND | 369 | $ 16,605 |
| | | HDMU6727920 | | | 369 | $ 16,605 |
| CIWB3506173 | ILLB454767 | TCLU8381489 | LOS ANGELES, CA | BANGKOK, THAILAND | 369 | $ 16,605 |
| GABK3483769 | GASV388060 | HDMU6524408 | SAVANNAH, GA | BANGKOK, THAILAND | 374 | $ 16,830 |
| | | HDMU6714630 | | | 374 | $ 16,830 |
| GAWB3490436 | GALB332241 | DFSU6651468 | SAVANNAH, GA | BANGKOK, THAILAND | 376 | $ 16,920 |
| GAWB3499628 | GASV389138 | BSIU9231780 | SAVANNAH, GA | BANGKOK, THAILAND | 362 | $ 16,290 |
| | | HDMU6537940 | | | 362 | $ 16,290 |
| | | TEMU6937540 | | | 362 | $ 16,290 |
| | | DFSU7370438 | | | 362 | $ 16,290 |
| | | TCLU6238020 | | | 362 | $ 16,290 |
| | | HDMU6467247 | | | 362 | $ 16,290 |
| GAWB3507057 | GASV389034 | SEGU6013895 | SAVANNAH, GA | BANGKOK, THAILAND | 339 | $ 15,255 |
| | | TCNU5130044 | | | 339 | $ 15,255 |
| GAWB3502482 | GASV369139 | BMOU4147060 | SAVANNAH, GA | LAEM CHABANG, THAILAND | 361 | $ 16,245 |
| | | CAIU8426015 | | | 361 | $ 16,245 |
| | | DFSU6948157 | | | 361 | $ 16,245 |
| | | TRLU7165592 | | | 361 | $ 16,245 |
| NRWB3486029 | VALB301449 | TEMU7510510 | NORFOLK, VA | LAEM CHABANG, THAILAND | 377 | $ 16,965 |
| TXWB3494334 | TXLB412628 | BMOU4140487 | LOS ANGELES, CA | BANGKOK, THAILAND | 398 | $ 17,910 |
| | | HDMU6516383 | | | 398 | $ 17,910 |
| | | TCNU9194284 | | | 398 | $ 17,910 |
| | | HMMU6046190 | | | 398 | $ 17,910 |
| TXWB3499421 | TXLB413757 | HDMU6830202 | LOS ANGELES, CA | BANGKOK, THAILAND | 376 | $ 16,920 |
| TXWB3502469 | TXLB413758 | HDMU6544370 | LOS ANGELES, CA | BANGKOK, THAILAND | 377 | $ 16,965 |
| | | TCNU7409716 | | | 377 | $ 16,965 |
| **Total** | | | 26 Cases | | | $ 433,080 |

D 34

## DECLARATION OF SERVICE

I, the undersigned, certify and declare as follows:

I am employed in the County of Los Angeles, State of California and am over the age of eighteen and not a party to this action.  My business address is 555 East Ocean Boulevard, Suite 600, Long Beach, California 90802.

On July 21, 2020, I served the foregoing *DECLARATION OF SEUNG H. KIM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT* as follows:

[ ]  by personal delivery of a true copy thereof to:

[√]  by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at Long Beach, California, addressed as follows:

                    All New, Inc.
              Attn: Zheng Sun-Agent
        4201 Farm to Market 1960 Road, Suite 218
                  Houston, TX 77068

[ ]  (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[√]  (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.


Executed on July 21, 2020, in Long Beach, California.


_____
Victoria Mathis